**SO ORDERED.**

**SIGNED this 16th day of April, 2012.**





Robert E. Nugent
United States Chief Bankruptcy Judge
_____

OPINION DESIGNATED FOR ON-LINE PUBLICATION
BUT NOT PRINT PUBLICATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

IN RE:                                       )
                                             )
MARVIN H. MOORE,                             )   Case No. 10-10533
                                             )   Chapter 7
        Debtor.                          )
_____)
                                             )
EDWARD J. NAZAR, Trustee for                 )
Marvin H. Moore,                             )
                                             )
        Plaintiff,                       )
v.                                           )   Adversary No. 11-5035
                                             )
ALLIED CONSUMER SERVICES, LLC                )
                                             )
        Defendant.                       )
_____)

### ORDER GRANTING PLAINTIFF SUMMARY JUDGMENT

Credit services organizations (CSO's) that engage in debt management for compensation are

required by Kansas law to register with the state bank commissioner. Failure to do that is a violation of the Kansas Credit Services Organization Act (KCSOA) and is also a deceptive act that violates the Kansas Consumer Protection Act (KCPA).[1] Plaintiff sued Allied Consumer Services for violating both acts. Allied did not file a proper answer or a response to the plaintiff's motion for summary judgment. The material facts pled in the complaint and properly supported in the motion are therefore deemed undisputed and the court may grant summary judgment if those undisputed facts entitle the plaintiff to judgment as a matter of law.[2] Violations of the KCSOA are remedied by judgment for actual damages and attorneys fees.[3] Violations of the KCPA carry an additional civil penalty.[4] Any remedies afforded by the KCSOA are cumulative to those provided for in the KCPA. Allied violated the KCSOA by not registering in Kansas and is answerable in actual damages for that; its failure to register and its other deceptive activities render it liable for two additional civil penalties at $10,000 per act as well as attorneys' fees and costs.

*Procedural Background*

Marvin Moore filed his bankruptcy case on March 3, 2010. Before that, he signed a contract with Allied for debt resolution advice. Moore had about $44,000 in unsecured consumer debt. Allied represented that it could reduce this debt to $17,600. For that service it would charge $6,600,

---

[1] KAN. STAT. ANN. §§ 50-1118, 50-1132 (2005)

[2] *See Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002) (A court may not grant summary judgment in favor of movant solely based on nonmovant's failure to file a response to the summary judgment motion.); *Murray v. City of Tahlequah, Okla.,* 312 F.3d 1196, 1200 (10th Cir. 2002) (same); D. Kan. LBR 7056.1(a) (All properly supported material facts of the movant are deemed admitted if the non-movant fails to respond.).

[3] KAN. STAT. ANN. § 50-1133.

[4] KAN. STAT. ANN. §§ 50-634(b)(2) and 50-636(a) (2005)

payable in installments. Moore paid Allied $6,722.33 over eleven months' time. Several of Moore's creditors sued him anyway and he filed this chapter 7 case.

The chapter 7 trustee, Edward J. Nazar, sued Allied for violations of the KCSOA and the KCPA in connection with its conduct. Allied's registered agent was served personally in Phoenix and responded with a letter generally denying the trustee's allegations. Because the letter purported to be a response to the complaint, and because entities may not appear pro se in cases or proceedings in this District, I issued a notice of deficiency directing that an answer or other pleading be filed by an attorney.[5] That notice was returned unopened a month later, marked "not deliverable."[6] When no proper answer to the trustee's complaint was filed, the trustee obtained a default judgment against Allied on August 15, 2011.[7] It remains for the trustee to demonstrate its entitlement to damages, civil penalties, and attorney fees and has filed this motion for summary judgment to that end.

Allied filed nothing in response to the motion for summary judgment.[8] Rule 56(e) provides that when the nonmovant does nothing to controvert the movant's facts asserted in a summary judgment motion and the facts are properly supported, the court may consider them undisputed, and if those undisputed facts demonstrate that movant is entitled to judgment as a matter of law, may grant summary judgment.[9] The following summary of facts pled by the plaintiff and properly

---

[5] *See* D. Kan. LBR 9010.1; Dkt. 9.

[6] Dkt. 12.

[7] Dkt. 21.

[8] The Court's letter to Allied setting forth its deadline to respond to the summary judgment motion was also returned undeliverable. Dkt. 29, 31.

[9] Fed. R. Civ. P. 56(e)(3) (If the [adverse] party does not so respond, summary judgment may be granted *if the motion and supporting materials – including the facts considered undisputed –* show that the movant is entitled to it."); D. Kan. LBR 7056.1(a) (All properly

-3-

supported are, therefore, not in dispute, and support the entry of judgment as set out below.[10]

*Facts*

The debtor Marvin Moore is a resident of Kansas. In November 2008, the debtor enrolled in a debt settlement program with Allied Consumer Services, LLC. The debtor became aware of Allied's services through an advertisement on the radio and/or on television. The Client Agreement executed by debtor provides:

> The subject matter of this representation of CLIENT [Debtor] by COMPANY [Allied] is for the resolution of outstanding debts through negotiation and settlement with the creditors listed by CLIENT . . .

The parties expressly acknowledged that "CLIENT has engaged COMPANY for the sole purpose of negotiating a resolution of said creditors within the Agreement." Debtor agreed to "budget in personal savings" $672.22 per month for 36 months. The Client Agreement states: "These funds are budgeted for ultimate distribution to creditors. CLIENT will make all settlement payments directly to creditors."[11] Allied never registered as a credit services organization with the Kansas Bank Commissioner.

Allied required the debtor to list all of his unsecured debt, which totaled approximately $44,000.00. Based upon Allied's estimated settlement percentage of forty (40) percent, Allied claimed it could settle all of debtor's unsecured debt for $17,600.00 for a charge of $6,600.00, its

---

supported material facts of the movant are deemed admitted if the non-movant fails to respond.).

[10] Plaintiff's statement of uncontroverted facts is properly supported by the affidavit of Marvin H. Moore. *See* Fed. R. Civ. P. 56(c)(1)(A) and (4). The Court may also consider materials that are not cited by movant, but in the record such as the complaint. *See* Fed. R. Civ. P. 56(c)(3). By virtue of Allied's default, the factual allegations of the complaint are admitted. *Olcott v. Delaware Flood Co.,* 327 F.3d 1115, 1125 (10th Cir. 2003).

[11] *See* Client Agreement, p. 2.

-4-

negotiation fee for its services. Allied represented that this would require a monthly payment of $672.22 from debtor. Allied required the debtor to make monthly payments of $672.22 for eleven (11) months to pay its negotiation fee *before* Allied would begin to negotiate with the debtor's creditors. The debtor received an enrollment summary page and signed a client agreement with Allied that also reflected these terms of their agreement. At Allied's instance, the debtor also executed an ACH Authorization form to allow for automatic withdrawal of the monthly payments from debtor's bank account. The debtor decided, however, to make the monthly payments to Allied by check. The debtor also executed a Limited Power of Attorney for the benefit of Allied.

The debtor made his monthly payments of $672.22 for ten (10) months. The total amount the debtor paid Allied was $6,722.22. Based upon the representation by an Allied agent, the eleventh payment was to be returned to the debtor as a reward for making timely payments.[12] That never happened. While the debtor was paying Allied its negotiation fee, several creditors contacted the debtor to resolve the debts the debtor owed them. The debtor requested the return of some the debtor's payments so the debtor could settle those debts, but Allied refused. After the debtor made his tenth payment on time, the debtor contacted Allied to see if the debtor could simply deposit the eleventh payment in the debtor's account instead of making the payment only to have Allied return it, but Allied refused. This, along with Allied's refusal to return funds so the debtor could settle the debtor's debt, caused the debtor to terminate his agreement with Allied. The debtor requested Allied to return the money he paid, but Allied refused to do so. To date, Allied has yet to refund any money

---

[12] *See* Client Agreement, p.3, where this returned payment is described as a Program Completion Bonus Incentive but provides for a debtor refund "equal to 3% of the total enrollment fees paid for a total of $1,320.00." The Court observes that by its calculation this refund is equal to the amount of debtor's total unsecured debt, some $44,000, not his enrollment fees. In any event, it does not match up with debtor's monthly payment.

-5-

to the debtor.

The plaintiff filed this adversary action against Allied on February 3, 2011, alleging violations of the Kansas Consumer Protection Act (KCPA) and the Kansas Credit Services Organization Act (KCSOA). In addition to the sum paid by debtor to Allied, the Plaintiff has incurred $2,012.50 in attorney fees and $202.01 in costs for the prosecution of this action.

*Analysis*

<u>Allied violated the KCSOA by failing to register</u>

KAN. STAT. ANN. § 50-1118 requires that anyone engaging in the debt management business with a Kansas resident must register as a credit services organization with the Kansas bank commissioner, post a bond, and fulfill a number of other duties.[13] A CSO is one that provides debt management services for a fee.[14] Debt management is defined in the Act to include "negotiating or offering to negotiate to defer or reduce a consumer's obligations with respect to credit extended by others."[15] Violation of the act is answerable in actual damages plus attorneys fees.[16] Further, a violation of the KCSOA is deemed by law to also be a deceptive practice under § 50-626, the KCPA, and whatever remedies are provided for in that act are cumulative to those allowed in the KCSOA.[17] A violation of the KCPA and specifically the commission of a deceptive act is

---

[13] *See* § 50-1119 to § 50-1123. A "consumer" under the Act is an individual who is a Kansas resident, § 50-1117(b).

[14] § 50-1117(c).

[15] § 50-1117(d).

[16] § 50-1133.

[17] § 50-1132

-6-

answerable either in actual damages or a civil penalty of $10,000 per act, whichever is greater.[18]

Here, the undisputed facts establish that Allied is a CSO and did not register with the state bank commissioner. That violates § 50-1118 of the KCSOA and, is, therefore, a deceptive act by operation of § 50-1132. The remedy for the KCSO violation is the actual damages the debtor suffered, the $6,722 that he paid to Allied and did not receive back, plus the estate's attorneys fees, $2,012.50, and costs, $202.01.

<u>Allied violated the KCPA by committing deceptive acts</u>

As noted above, violating the KCSOA is, of itself, a deceptive act. The remedies are cumulative. So, not only is Allied answerable in actual damages under the KCSOA, but it is also answerable for the civil penalty provided in the KCPA, KAN. STAT. ANN. § 50-634(b) and § 50-636(a). Section 50-636(a) provides for a penalty of up to $10,000 per act. There is no question that Allied is liable for an additional $10,000 penalty for failing to register under the KCSOA.

In addition to registration, plaintiff alleges other violations of the KCSOA by Allied as the predicate for a civil penalty for a deceptive act – "failing to provide the necessary disclosures and financial analysis required by the KCSOA."[19] Plaintiff does not detail what those omitted disclosures are nor specify the applicable KCSOA sections violated by Allied. Section 50-1120(c) specifies the information and disclosures that must be contained in the debt management services agreement. Section 50-1120(b)(1)(B) requires a CSO to "prepare[ ] and provide[ ] to the consumer a written financial analysis of and initial budget plan for all of the consumer's debt obligations which indicates the consumer can reasonably meet the requirements set forth in the budget plan." An

---

[18] § 50-634(b) and -636(a).

[19] Dkt. 28, p. 8.

-7-

examination of the Client Agreement and the Enrollment Summary Page, reveal that several of the disclosures required by § 50-1120(c) are omitted.[20] Nor is there any evidence in the record of a written financial analysis of debtor's debt obligations and cash flow to show debtor can make the payments required by the plan. On the record before it, this Court concludes that Allied indeed violated § 50-1120 in numerous ways and such violations constitute deceptive acts. The plaintiff demands only one additional civil penalty arising out of this cluster of violations.

Therefore, the plaintiff is entitled to recover a maximum civil penalty of $10,000 in connection with the deceptive act of failing to register under the KCSOA, § 50-1118, and a further civil penalty of $10,000 for the deceptive acts in failing to make all the required disclosures and prepare a written financial analysis as prescribed by § 50-1120 of the KCSOA.

<u>Summary judgment is granted</u>

The motion is GRANTED. Plaintiff is entitled to judgment on his complaint for (1) $6,722.22 actual damages for violating the KCSOA under § 50-1133; (2) $10,000 civil penalty under §50-636(a) for violating the KCSOA, § 50-1118, a deceptive act; and (3) a $10,000 civil penalty for additional violations of the KCSOA, § 50-1120, also deceptive acts. Plaintiff should also receive his attorney's fees of $2,012.50 and costs of $202.01. A judgment on decision shall issue this day.[21]

---

[20] § 50-1120(c)(5) [a list of debtor's creditors under the debt management agreement], (c)(6) [list of creditors not expected to participate in the plan], (c)(7) [that Allied may also receive compensation from debtor's creditors], (c)(8) [that entry into a debt management agreement may not be conditioned upon the purchase of other services or products], and (c)(11) [a notice with contact information for the State Bank Commissioner to receive consumer questions and complaints].

[21] Defendant is in default of answer and has not questioned this court's jurisdiction to enter a final judgment in this proceeding. To the extent that a court of appellate jurisdiction

-8-

# # #

---

should determine that any part of this proceeding was not core or that this court lacked the power to enter a final judgment, the forgoing findings of fact and conclusions of law should be deemed proposed under Fed. R. Bankr. P. 9033, subject to District Court review upon appropriate and timely objection.

Case 11-05035    Doc# 32    Filed 04/16/12    Page 9 of 9